UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JAVIER VEGA**, individually and on behalf of other similarly situated employees, | )<br>)<br>) |
| | ) Case No. |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| **MID-AMERICA TAPING & REELING, INC.,**<br>**BARBARA PAULS**, individually, and **RASHID**<br>**ABDALLAH**, individually, | )<br>)<br>)<br>) |
| Defendants. | ) |

## CLASS AND COLLECTIVE ACTION COMPLAINT

NOW COMES the Plaintiff, Javier Vega ("Vega"), individually, and on behalf of other similarly situated employees, pursuant to 29 U.S.C. § 201 *et seq.,* commonly known as the Fair Labor Standards Act ("FLSA"); 820 ILCS § 105/1 *et seq.,* commonly known as the Illinois Minimum Wage Law ("IMWL"); and 820 ILCS § 115/1 *et seq.,* commonly known as the Illinois Wage Payment and Collection Act ("IWPCA"), and complains against Defendants, Mid-America Taping & Reeling, Inc., ("Mid-America"), Barbara Pauls ("Pauls"), individually, and Rashid "Rick" Abdallah ("Abdallah") (collectively, "Defendants"), and in support states:

## NATURE OF THE ACTION

1.  This action seeks redress for Defendants' willful violations of state and federal wage and hour laws stemming from Defendants' illegal deductions from Vega and other similarly situated employees' pay. Vega brings this action against Defendants to recover unpaid wages, interest, statutory penalties, liquidated damages, and attorney's fees and costs owed to him and other

similarly situated current and former employees. Vega also brings this action to obtain declaratory and injunctive relief, as well as all other relief that the Court deems appropriate.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this case pursuant to 29 U.S.C. § 216(b) (FLSA) and 28 U.S.C. § 1331 (federal question).

3. The Court has supplemental jurisdiction over Vega's state law claims pursuant to 29 U.S.C. § 1367 because they are so related to Vega's claim within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is properly placed in the Northern District of Illinois, Eastern Division, through 28 U.S.C. § 1391(b), because a substantial part of the facts, events, or omissions giving rise to Vega's claims occurred in this judicial district.

## PARTIES
### Plaintiff Javier Vega

5. Vega resides and is domiciled in DuPage County, Illinois, which is in this judicial district.

6. During the course of his employment, Vega handled goods that move, or that were intended to move, in interstate commerce.

7. Vega maintained no degree of control in his job functions and did not set his shift schedule.

8. Vega did not have the ability to generate an unlimited amount of revenue in excess of expenses, and did not risk that expenses might exceed his revenue in regards to his employment.

9. Vega had no large expenditures, risk capital, or capital investments in his employment.

10. Vega's job functions required no specialized skills.

11. Vega was hired and worked his assigned shift until Defendants terminated the relationship.

12. Vega was an "employee" of Defendants as defined by the FLSA, IMWL and the IWPCA.

### Defendants

13. Defendant Mid-America is an entity doing business within this judicial district and is an "enterprise" as defined by the FLSA, 29 U.S.C § 203(r)(1), engaged in commerce with the meaning of 29 U.S.C § 203(s)(1)(A).

14. During relevant times, Defendant Mid-America manufactures, sells and distributes, surface mount tape, axial tape, radial tape and reels.

15. Defendant Mid-America's customers include, but are not limited to, Motorola Inc., Honeywell International Inc. and Lockheed Martin.

16. During relevant times, Defendant Mid-America employs upwards of 80 employees who collectively work 3 separate designated shifts.

17. During relevant times, Defendant Mid-America engaged in annual gross sales or business in excess of $500,000.00.

18. Defendant Mid-America is Vega's "employer" as the term is defined by the FLSA, 29 U.S.C § 203(d), the IMWL, 820 ILCS 105/3(c), and the IWPCA, 820 ILCS 115/2.

19. Defendant Pauls, is the owner of Mid-America, and is involved in the day-to-day business operations. Defendant Pauls has the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the business's checking accounts, including payroll accounts, and the authority to participate in decisions regarding employee compensation and capital expenditures.

20. Defendant Pauls is Vega's "employer" as the term is defined by the FLSA, 29 U.S.C § 203(d), the IMWL, 820 ILCS 105/3(c), and the IWPCA, 820 ILCS 115/2.

21. Upon information and belief, Defendant Pauls resides and is domiciled in this judicial district.

22. Defendant Abdallah is an agent for Defendant Pauls and Defendant Mid-America.

23. Defendant Abdallah acts under the authority of Defendant Pauls and transacts business functions on behalf of Defendant Mid-America.

24. Defendant Abdallah acts under the authority of Defendant Pauls to sign on the payroll accounts and Defendant Pauls explicitly grants Defendant Abdallah the authority to perform payroll services and human resource services on behalf of Defendant Mid-America.

25. Upon information and belief, Defendants did not record and preserve employee records in accordance with 29 C.F.R. Part 516.

26. Upon information and belief, a notice of employee rights under the FLSA, with content prescribed by the Wage and Hour Division of the United States Department of Labor, was not posted in a conspicuous area of the workplace as required by the FLSA.

## FACTS

27. Vega worked for Defendant Mid-America from early 2016 to August 12, 2016 when he was terminated, and was paid $8.25 per hour during his employment.

28. Vega's job functions included, but were not limited to, manufacturing embossed carrier tape and assisting in the manufacturing and/or distribution of all materials used in the surface mount, axial/radial taping and reeling, programming and baking processes.

29. Beginning in or about early 2016, Defendant Pauls organized and arranged a

mandatory employee meeting at the Mid-America facilities which all "undocumented workers" were required to attend.

30. Vega is an "undocumented worker" and was known to be an undocumented worker when hired by Defendant Pauls.

31. During said meeting, Defendant Pauls made it a requirement that all undocumented worker employees sign contracts for U.S. Department of Labor labor certification services with Defendant Abdallah.

32. Pursuant to 20 C.F.R. § 655.200(c) and 20 C.F.R § 656.10, labor certification is a process to be carried out by an employer in which the employer must prove, *inter alia*, that there are no qualified U.S. citizen workers available for a job position that the employer is offering.

33. Vega and similarly situated employees were not allowed to consult with or seek out a different party to perform this labor certification service. Vega and similarly situated employees were also not allowed to ask a qualified immigration attorney or an authorized agent of the Department of Justice's Board of Immigration Appeals if labor certification was even legitimately possible given each individual employee's circumstances and job function.

34. Defendant Pauls made it compulsory for Vega to sign a contract with Abdallah with threats of either being terminated or reported to immigration authorities.

35. Defendant Abdallah, under the authority of Defendant Pauls, represented to Vega and other similarly situated employees that he was a licensed certified public accountant and licensed attorney who had been practicing for 25 years.

36. Defendant Abdallah is not listed on any of the 50 states' official state regulatory Boards of Accountancy central database as a licensed certified public accountant.

37. Defendant Abdallah is not listed on any of the 50 states' individual bar registry as a

licensed attorney, including most relevantly Illinois and Florida.

38. Defendant Abdallah is not authorized by the Department of Justice's Board of Immigration appeals to provide immigration services.

39. Defendant Abdallah tendered attorney engagement letters to Vega and similarly situated employees in which Vega and similar situated employees were required to pay $7,500.00 for a labor certification application.

40. Vega inquired to management at Defendant Mid-America about the repercussions for not using Defendant Abdallah's service or seeking services on his own, and was told that his paycheck would automatically be deducted should he decide not to pay Defendant Abdallah.

41. Defendant Mid-America set Vega and similarly situated employees on a mandatory payment schedule in which they were required to pay Defendant Abdallah every two weeks.

42. On or about May 13, 2016, Vega's paycheck was deducted by Defendant Mid-America for failing to pay Defendant Abdallah.

43. Defendants labeled this deduction on Vega's paycheck as "Loan Repayment".

44. Defendants never obtained Vega's or other workers' written authorization to make these deductions from their wages.

45. As a result of Defendants' deductions, Vega was not paid for all the hours he worked. Vega and similarly situated employees frequently were required to make payments from their paychecks for services which had no value to them, and after the deductions, Vega and similarly situated employees were not paid the minimum or overtime wages required by the federal and Illinois wage laws.

46. During all relevant times, Defendant Pauls was aware and allowed her agent, Defendant

Abdallah, to make deductions from Vega and similarly situated employees' wages for services that had no relation to their job functions, were of no real value, and were without authorization. Defendant Pauls did nothing to stop this practice.

## COLLECTIVE ACTION ALLEGATIONS

47. Vega brings Count I of this Complaint as a collective action on behalf of himself and all other current and former hourly employees of Defendant Mid-America, whom Defendants required to perform the work described herein without pay.

48. Vega has actual knowledge that FLSA Class Members have been denied overtime pay for hours worked over forty hours per workweek. That is, Vega worked with other factory employees who worked at Defendants' factory. As such, he has first-hand personal knowledge that the same pay violations occurred to other class members. Furthermore, other factory employees at Defendants' factory have shared with him similar pay violation experiences as those described in this complaint.

49. Other employees similarly situated to Vega work or have worked at Defendants' factory, and suffered the same improper pay deductions as Vega.

50. As a result of the pay deductions complained of herein, Defendants have not paid Vega and those similarly situated the full compensation for their hours worked at the federally mandated minimum wage rate.

51. FLSA Class Members perform or have performed the same or similar work as Vega.

52. FLSA Class Members regularly work or have performed worked for which they were not paid the federally mandated minimum wage rate.

53. FLSA Class Members are not exempt from receiving minimum wage or overtime pay at the federally mandated wage rate under the FLSA.

54. As such, FLSA Class Members are similar to Vega in terms of job duties, pay structure, and the denial of minimum and overtime wages.

55. Defendants' failure to pay the minimum and overtime compensation wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Class Members.

56. The experiences of Vega, with respect to his pay, are typical of the experiences of the FLSA Class Members.

57. The specific job titles or precise job responsibilities of each FLSA Class Member do not prevent collective treatment.

58. All FLSA Class Members, irrespective of their particular job requirements, are entitled to minimum wage for all regular time hours and overtime compensation for hours worked in excess of forty during a workweek.

59. Although the exact amount of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all FLSA Class Members.

60. As such, Vega's counsel seek to send notice of this lawsuit to the following described persons:

> All persons who worked for Defendants as factory employees, however titled, and who were compensated, in part or in full, on an hourly basis throughout the United States at any time between August 16, 2013 and the present who did not receive the full amount of minimum and overtime wages earned and owed to them.

61. There are questions of law or fact common to the employees described in paragraph 60 of this complaint.

62. Vega is similarly situated to the employees described in paragraph 60, as Vega's claims are typical of the claims of those persons.

63. Vega's claims or defenses are typical of the claims or defenses of the persons described in paragraph 60.

64. This is not a collusive or friendly action. Vega has retained counsel experienced in complex employment litigation, and Vega and his counsel will fairly and adequately protect the interests of the persons described in paragraph 60.

65. A collective action is the most appropriate method for the fair and efficient resolution of the matters alleged in Count I.

66. At all relevant times, Defendants employed Vega and the persons described in paragraph.

## CLASS ACTION ALLEGATIONS

67. Vega brings Counts II and III as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all other current and former hourly employees of Defendants who Defendants required to perform the work described herein without pay.

68. With respect to Vega's IMWL claims, Vega seeks to represent a class that is comprised of and defined as:

> All persons who worked for Defendants as factory employees, however titled, who were compensated, in part or in full, on an hourly basis in Illinois at any time between August 16, 2013 and the present who did not receive the full amount of minimum or overtime wages earned and owed to them (the "IMWL Class").

69. With respect to Vega's IWPCA claim, Vega seeks to represent a class that is comprised of and defined as:

9

> All persons who worked for Defendants as factory employees, however titled, who were compensated, in part or in full, on an hourly basis in Illinois at any time between August 16, 2006 and the present who suffered deductions from their wages not authorized by the IWPCA (herein the "IWPCA Class").

70.     This action is being brought as a class action pursuant to Fed. R. Civ. P. 23, because the IMWL Class and IWPCA Class are so numerous that joinder of all class members is impracticable.

71.     Vega and the members of the IMWL Class and IWPCA Class have been equally affected by Defendants' practice of making deductions from their hourly wages not authorized by the IWPCA.

72.     Vega and the members of the IMWL Class and IWPCA Class have been equally affected by Defendants' failure to pay all earned wages to Vega and the class members.

73.     Furthermore, members of the IMWL Class and IWPCA Class still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

74.     The issues involved in this lawsuit present common questions of law and fact and these common questions of law and fact predominate over the variations that may exist between members of the IMWL and IWPCA Class, if any.

75.     Vega and the members of the IMWL Class and IWPCA Class, as well as Defendants, have a commonality of interest in the subject matter and the remedy sought.

76.     Vega is able to fairly and adequately represent and protect the interests of the members of the IMWL Class and IWPCA Class.  Vega's counsel are competent and experienced in litigating large wage and hour and other employment class actions.

77.     If individual actions were required to be brought by each member of the Classes injured or affected, the result would be a multiplicity of actions, creating a hardship to the members of the IMWL Class and IWPCA Class, to the Court, and to Defendants.  Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the

common fund to which the Classes are entitled.

78. Vega has retained counsel experienced in complex employment litigation and in class action litigation.

79. Vega and his counsel will fairly and adequately protect the interest of both classes.

### COUNT I: VIOLATION OF THE FLSA
**Minimum and Overtime Wages**

80. Vega re-incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

81. The FLSA requires employers, including Defendants, to pay at least the minimum wage to their employees for all hours worked up to forty hours per workweek, and at least 1.5 times the employee's regular rate of pay for all hours worked in excess of forty hours per workweek, unless those employees are exempt.

82. Vega is not exempt from the minimum or overtime wage provisions of the FLSA.

83. Defendants did not pay Vega and similarly situated employees at least the minimum wage for the hours that they worked up to forty hours per workweek, or at least 1.5 times the employees' regular rate of pay for all hours worked in excess of forty hours per workweek, as described in paragraph 60, *supra*.

84. Defendants' failure to pay the legally mandated minimum and overtime wages to Vega and similarly situated employees violated the FLSA.

85. Defendants failed to comply with the predicate requirements under the FLSA by failing to inform Vega and similarly situated employees of their right to receive the minimum wage.

86. Defendants' failure to comply with the terms of minimum wage disclosure

requirements, and Defendants' failure to pay the full amount of minimum and overtime wages to Vega and similarly situated employees, was a willful violation of the FLSA.

87. Defendants violated the FLSA by refusing to compensate Vega and similarly situated employees in accordance with the minimum and overtime wage provisions of the FLSA.

88. Vega and other similarly situated employees are entitled to recover unpaid minimum and overtime wages for up to three years prior to the filing of this lawsuit because Defendants' failure to pay at least the federal minimum and overtime wages was a willful violation of the FLSA.

WHEREFORE, Vega and similarly situated employees request that this Honorable Court:

A. Determine that this action may be maintained as a collective action pursuant to the FLSA;

B. Enter judgment in the amount of the difference between the Illinois-mandated minimum wage rate and the hourly wage paid to Vega and similarly situated employees of Defendants for all time worked up to forty hours per workweek;

C. Enter judgment in the amount of the difference between the proper and applicable overtime wage rate and the overtime wage paid to Vega and similarly situated employees of Defendants for all time worked in excess of forty hours per workweek;

D. Award liquidated damages in an amount equal to unpaid minimum and overtime wages;

E. Declare Defendants to be in violation of the FLSA;

F. Enjoin Defendants from violating the FLSA;

G. Award reasonable attorney's fees and costs; and

H. Grant such additional or alternative relief as this Honorable Court deems just and proper.

**COUNT II: VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW**
**Minimum and Overtime Wages**

89. Vega re-incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

90. This count arises from Defendants' violation of the IMWL, by failing to pay Vega and similarly situated employees the Illinois-mandated minimum and overtime wages for all hours worked in an individual workweek, as described in paragraph 68, *supra.*

91. Vega was directed to work by Defendants, and in fact did work, but was not compensated at the Illinois minimum wage rate for all time worked up to forty hours per workweek, or at the required 1.5 times his regular rate of pay for all time worked in excess of forty hours per workweek.

92. Vega is entitled to be paid not less than the Illinois-mandated minimum and overtime wages for all hours worked in an individual workweek.

93. Defendants' failure to pay Vega the Illinois-mandated minimum and overtime wage rate for all hours worked in an individual workweek was a violation of the IMWL.

94. Pursuant to 820 ILCS 105/12(a), Vega is entitled to recover unpaid wages for three years prior to the filing of this suit.

WHEREFORE, Vega and the similarly situated employees respectfully request that this Honorable Court:

A. Enter a judgment in the amount of all unpaid minimum and overtime wages due to Vega and similarly situated employees as provided by the IMWL;

B. Award Statutory damages for Vega and similarly situated employees pursuant to the formula set forth in 820 ILCS § 105/12(a) and 815 ILCS § 205/2;

C. Declare that Defendants have violated the IMWL;

D. Enjoin Defendants from violating the IMWL;

E. Award reasonable attorney's fees and costs of this action as provided by the IMWL; and

F. Grant such additional or alternative relief as this Honorable Court deems just and proper.

## COUNT III: VIOLATION OF THE
## ILLINOIS WAGE PAYMENT AND COLLECTION ACT
### Unlawful Deductions Claim

95. Vega re-incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

96. This count arises from Defendants' violation of the IWPCA, by failing to pay Vega and similarly situated employees proper wages earned during the relevant time period they worked for Defendants, as described in paragraph 69, *supra.*

97. Section 115/9 of the IWPCA, 820 ILCS 115/9 prohibits an employer from making deductions from the wages of employees unless the deductions are: (1) required by law, (2) to the benefit of the employee, (3) in response to a valid wage assignment or wage deduction order, or (4) made with the express written consent of the employee, given freely at the time the deduction is made.

98. Defendants deducted amounts from Vega's and other similarly situated employees' wages which were not required by law, in violation of Section 9 of the IWPCA.

99. Defendants deducted amounts from Vega's wages which were not a benefit to him, in violation of Section 9 of the IWPCA.

100. Defendant deducted amounts from Vega's wages which were not in response to a valid wage assignment or wage deduction order, in violation of Section 9 of the IWPCA.

101. Defendants deducted amounts from Vega's wages without their express written consent at the time of the deductions, in violation of Section 9 of the IWPCA.

WHEREFORE, Vega and similarly situated employees request that this Honorable Court:

A. Enter a judgment in the amount of all unpaid wages and compensation deducted from Vega's and other similarly situated employees' wages as provided by the IWPCA;

B. Declare that Defendants have violated the IWPCA, 820 ILCS 115/3, 4 & 9;

C. Enjoin Defendants from violating the IWPCA;

D. Award penalties in the amount of 2% of all unpaid wages for each month the unpaid wages remain delinquent, as provided by 820 ILCS 115/14(s);

E. Award prejudgment interest on the back wages in accordance with 815 ILCS 205/2;

F. Award attorney's fees and costs of this action as provided by Section 14 of the IWPCA; and

G. Grant such additional or alternative relief as this Honorable Court deems just and proper.

**Dated: August 17, 2016**

Respectfully Submitted,

      /s/ Kasif Khowaja
*One of the Attorneys for Plaintiff*

Kasif Khowaja
**The Khowaja Law Firm, LLC**
70 East Lake St. Suite 1220
Chicago IL 60601
312-356-3200 – T
312-386-5600 – F
kasif@khowajalaw.com
*Co-Counsel for Plaintiff*

Khalil J. Khalil
**ZKT Law, LLC**
70 East Lake St. Suite 1220
Chicago IL 60601
312-356-3200 – T
312-356-3222 – F
khalil@zktlaw.com
*Co-Counsel for Plaintiff*

James X. Bormes
Catherine P. Sons
**Law Office of James X. Bormes, P.C.**
8 South Michigan Ave.
Suite 2600
Chicago, IL 60603
312-201-0575 - T
312-332-0600 - F
jxbormes@bormeslaw.com
cpsons@bormeslaw.com
*Lead Counsel for Plaintiff*