## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JAVIER VEGA and RIGOBERTO BARRETO, individually and behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:16-cv-08158 |
| | ) | |
| v. | ) | Hon. Thomas M. Durkin |
| | ) | |
| MID AMERICA TAPING & REELING, INC, BARBARA PAULS, RICKSTAR ASSOCIATES, LLC, and RASHID ABDALLAH, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs Javier Vega and Rigoberto Barreto's motion for certification of their Illinois Minimum Wage Law ("IMWL") claim under Federal Rule of Civil Procedure 23 and motion for conditional collective action certification of their Federal Labor Standards Act ("FLSA") claim. R. 74, 77. On October 27, 2017, the parties completed initial briefing on those motions. R. 81, 86. On February 15, 2018, the Court ordered additional briefing, expressing its concerns about, among other things, its jurisdiction and Plaintiffs' standing. R. 92. On February 23, 2018, the parties filed responsive surreplies. R. 93, 95. Plaintiffs' surreply did not adequately address the standing issue, and so the Court ordered Plaintiffs to file a statement "addressing why they believe they have standing to bring this case." R. 96. Plaintiffs filed their statement on April 19, 2018, R. 100, and Defendants filed a response on April 30, 2018, R. 101.

Despite repeated opportunities, and despite the almost-two-year pendency of this action, Plaintiffs have not articulated a cognizable injury in fact with respect to their sole federal claim. *See Stewart Title Guar. Co. v. Cadle Co.*, 74 F.3d 835, 836 (7th Cir. 1996) (district courts should permit plaintiffs an opportunity to address standing issues before *sua sponte* dismissing a case); *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing."). Accordingly, the Court dismisses Plaintiffs' Second Amended Complaint for the reasons described below.

## BACKGROUND

The parties' submissions discuss a number of facts going to the merits of Plaintiffs' claims and the appropriateness of certification. Only the following is relevant here.

The Second Amended Complaint ("SAC") asserts that, in late 2015, Mid America Taping & Reeling, Inc., and its owner Barbara Pauls, announced that in the new year the company would implement E-Verify. E-Verify is a government-offered program that compares company-held employment records with the Social Security Administration's records to confirm that employees are legally authorized to work in the United States. This litigation concerns the arrangement under which hourly employees who could not pass E-Verify continued to work for Mid America.

The SAC alleges that when Mid America announced its E-Verify plans, Rashid Abdallah, the owner of another company, Rickstar Associates, LLC, was also

present. Abdallah told the employees that those who could not pass E-Verify would be terminated from Mid America—yet they could continue to work there by signing independent-contractor agreements with Rickstar. About half of Mid America's workforce took Abdallah up on his offer and signed the agreements, including Plaintiffs. *See* R. 75-3 at 7–9. After doing so, those individuals continued to report to work at Mid America and their job responsibilities remained the same. They also continued to receive "the statutory minimum wage in effect at the time" under the IMWL, or $8.25 per hour. R. 75 at 6; 820 ILCS 105/4. The FLSA mandates a wage of $7.25. 29 U.S.C. § 206(a)(1)(C). The SAC, however, claims that the arrangement resulted in wages below the IMWL's and the FLSA's minimums. Specifically, it alleges that the arrangement misclassified them as contractors rather than hourly employees. By doing so, Defendants failed to deduct "taxes and contributions" and to "pay the employer portion of Social Security and Medicare and unemployment taxes." R. 57 ¶¶ 61, 121; *see also id.* ¶¶ 139, 146.

Based on that misclassification, the SAC brought one count under the FLSA, and one count under the IMWL. The SAC also brought claims under the Illinois Wage Payment and Collection Act, claims for fraud and fraudulent misrepresentation (based on a semi-related scheme by which Rickstar offered a "Labor Certificate Program" promising legal residence in exchange for pay deductions), and a claim for unjust enrichment.

## LEGAL STANDARD

"The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines." *United States v. $304,980.00 in U.S. Currency*, 732 F.3d 812, 817 (7th Cir. 2013); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("[I]t is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties."); *Metallgesellschaft AG v. Sumitomo Corp. of Am.*, 325 F.3d 836, 842 (7th Cir. 2003) ("[A] district court may dismiss a case *sua sponte* for lack of Article III standing if it finds that the plaintiff has not suffered injury-in-fact."). In addition to this independent obligation, a named plaintiff's Article III standing is an issue antecedent to the class-certification analysis. *See, e.g.*, *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) ("[B]ecause we conclude that Meyers lacks standing, we do not reach the certification question."); *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 750 (7th Cir. 2011) ("Before addressing the question of certification, we must consider . . . [whether] plaintiffs lack standing to sue."). That is, while a named plaintiff's standing to bring certain claims on behalf of the class need not be decided before class certification, *see Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002), a named plaintiff's Article III standing to bring her own claim is a "threshold jurisdictional issue," *see Marquez v. Weinstein, Pinson & Riley, P.S.*, 2017 WL 4164170, at *2 (N.D. Ill. Sept. 20, 2017). *Accord Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966–69 (7th Cir. 2016) (assessing standing

in a putative class action with respect only to the named plaintiffs); *see also* William B. Rubenstein, NEWBERG ON CLASS ACTIONS, Ch. 1 § 2:1 (5th ed. 2011) ("Because standing goes to a federal court's subject-matter jurisdiction, courts are required to examine whether the plaintiffs have standing regardless of whether the parties raise the issue.").

"The requirement that litigants possess standing ensures that courts do not decide abstract principles of law but rather concrete cases and controversies." *Meyers*, 843 F.3d at 726. To stave off advisory opinions, the "standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Scanlan v. Eisenberg*, 669 F.3d 838, 846 (7th Cir. 2012) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)). "[F]or each claim of wrongdoing alleged, a plaintiff must demonstrate . . . that he has suffered (or is imminently threatened with) an injury that is traceable to the wrongdoing alleged in *that* particular claim." *Johnson v. U.S. Office of Pers. Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015) (emphasis in original); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 ("[O]ur standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press.").

The burden of showing standing rests on the "party invoking federal jurisdiction," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992), and it "increases as the case proceeds through stages of litigation," *Ferenzi v. City of Chicago*, 2018 WL 1561728, at *3 (N.D. Ill. Mar. 30, 2018). Specifically, in *Lujan*,

the Supreme Court held that each of standing's elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." 504 U.S. at 561. As to the manner and evidence required at the class-certification stage, the Supreme Court later made clear that a plaintiff's case is no longer subject to a "mere pleading standard" at class certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, a plaintiff seeking certification must "affirmatively demonstrate" that it is appropriate, *id.*, with "evidentiary proof," *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). *See also, e.g.*, *In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053, 1057 (N.D. Cal. 2016) ("Class discovery is closed, and plaintiffs have moved to certify the class. At this stage, plaintiffs must show standing 'through evidentiary proof.'") (citing *Comcast*, 133 S. Ct. at 1432).

## ANALYSIS

From this case's filing to the present, Plaintiffs' theory of standing for the FLSA claim has been a moving target. The first complaint was conclusory, but asserted a failure to pay overtime and minimum wage. The SAC clarified that although Defendants in fact paid more than the FLSA minimum wage, they had misclassified Plaintiffs and the class as independent contractors and resultantly failed to "pay the employer portion of Social Security and Medicare and unemployment taxes." R. 57 ¶¶ 61, 121; *see also id.* ¶¶ 139, 146. The SAC did not claim that Plaintiffs were liable for those taxes, nor suggest that paying them would

force effective wages beneath the FLSA's minimum. Plaintiffs' class-certification briefs, however, did. After abandoning the claim for overtime pay (recognizing that Defendants never denied either Plaintiff such pay), Plaintiffs claimed that because "they were paid as supposed independent contractors, Plaintiffs and the putative collective have had to pay their own taxes." R. 78 at 6; *see also* R. 86 at 7–8, n. 1; 95 at 2. Plaintiffs' briefs also made vague reference to the "deni[al] of other benefits and worker protections, including under state unemployment and workers' compensation laws."[1] R. 95 at 2; *see also* R. 78 at 6.

Now, however, Plaintiffs admit that they did not pay the employers' share of taxes in 2016, the only year they worked as allegedly misclassified employees. Nevertheless, they articulate two more standing theories regarding their FLSA claims. First, Plaintiffs are at "risk" of a tax audit, which would make them liable for the employers' share and which would in turn drive their earnings below the minimum wage. R. 100 at 6. Second, they were not "able" to file for unemployment benefits because "Defendants no longer classified them as employees and were not making unemployment contributions on their behalf." *Id.* at 7. But even if these claims—unlike the previous ones—approximate the truth, neither gives rise to standing.

Article III standing requires injury in fact that is "fairly traceable" to the challenged conduct and that presents a "likelihood" of being "redressed by a favorable decision." *Evans v. Portfolio Recovery Assocs.* 889 F.3d 337, 344 (7th Cir.

---

[1] The SAC's only references to "benefits" are conclusory, and it makes no mention of "unemployment" or "workers compensation" benefits. *See* R. 57 ¶¶ 1, 149, 161.

2018). Thus, "[t]o qualify as a party with standing to litigate," Plaintiffs "must show, first and foremost," injury in fact. *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015). The Supreme Court teaches that an injury in fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). An injury is particularized if it affects the plaintiff "in a personal and individual way." *Id.* It is concrete if it is "*de facto*," meaning, "it must actually exist" and be "real," "not abstract." *Id.* "Concrete" does not mean tangible, however, and when assessing intangible injuries "both history and the judgment of Congress play important roles." *Id.* at 1549. "Actual or imminent," likewise, does not mean "the possibility of future injury must be certain, but there must be at least a substantial risk that such harm will occur." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1019 (7th Cir. 2016). Stated another way, the challenged conduct must create an "appreciable risk of harm." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016), *cert. denied,* 137 S. Ct. 2267 (2017).

Plaintiffs' first claimed injury—regarding the "risk" of a tax audit—does not meet those standards. They provide no reason to believe that the audit risk is remotely appreciable, and none occurs to the Court. In fact, they do not even claim that they filed taxes in 2016. Plaintiffs therefore face at most "an implausible and at worst trivial risk of harm." *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 911 (7th Cir. 2017); *see also Ass'n of Am. Physicians & Surgeons, Inc. v. Koskinen*, 768

F.3d 640, 642 (7th Cir. 2014) ("The longer the causal chain, the less appropriate it is to entertain standing."). What is more, even if Plaintiffs did face an audit and thus "bec[a]me liable to pay the employers' share of taxes," they do not explain how they would suffer an injury under or redressable by the FLSA. The FLSA's minimum wage is $7.25 per hour, 29 U.S.C. § 206(a)(1)(C), and Plaintiffs received, at a minimum, $8.25 per hour (*e.g.*, R. 95 at 1). Plaintiffs assert that the employers' share is between 7.5% and 7.65%.[2] *See* R. 100 at 5–6 & n. 1. Reducing those percentages from $8.25-per-hour earnings does not drive the effective earnings below the FLSA's minimum; subtracting 7.65% from $8.25 per hour comes out to more than $7.25 per hour (specifically, about $7.62 per hour). *See Ferenzi*, 2018 WL 1561728, at *3 (plaintiff lacked standing on his FLSA claims because he "produced no evidence that he was or will be paid less than what the FLSA" requires); *see also, e.g.*, *Labiola v. Clinton Entm't Mgmt.*, LLC, 2016 WL 1106862, at *4 (N.D. Ill Mar. 22, 2016) (Sections 206 and 207 provide a cause of action only for unpaid minimum and overtime compensation).[3]

---

[2] Plaintiffs do not specify from what income these taxes derive, so the Court presumes overall earnings.

[3] To the extent Plaintiffs imply that the FLSA provides a cause of action to employees paid more than federal minimum wage but less than state-law minimum wage, they provide no reasoning or authority to support that proposition. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped legal arguments are waived, as are arguments unsupported by legal authority."). But Section 216(b) of the FLSA, which vests the federal right of action, states only that any employer "who violates the provisions of section 206 or section 207" shall be liable—not any employer who violates whatever the state law's minimum wage may be. 29 U.S.C. § 216(b). Section 218(a), cited by Plaintiffs, is simply a savings clause that says that the FLSA's wages do not justify paying employees less than what state law may require. *See* 29 U.S.C. § 218(a).

Plaintiffs' second claimed injury fares no better. Assuming Plaintiffs are correct that they could not claim unemployment benefits as a result of Defendants' misclassification, they have not asserted that they ever sought, desired, or even desired to seek such benefits. *See, e.g.*, *Gubala*, 846 F.3d at 910 ("Although it's plausible that [plaintiff] feared [a leak of personal information], he never told us that this is what he was worried about."). Indeed to the contrary, Vega testified that he has never applied for unemployment benefits and Barreto testified that he has found other employment. *See* R. 101-2, R. 101-3; *Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 821 (7th Cir. 2014) ("[P]laintiffs here argue that they have standing because they were denied a benefit . . . This argument fails, however, for a simple reason: the plaintiffs were never *denied* the parsonage exemption because they never asked for it."). Plaintiffs' own assertions—and lack thereof—suggest only some never-materialized, and likely never-to-materialize, abstract injury. What is again more, Plaintiffs have not asserted that they are (or were) otherwise eligible to seek unemployment benefits. They have therefore failed to claim that the injury (abstract as it is) is fairly traceable to Defendants' conduct and would be redressable by a favorable FLSA ruling. *See Segovia v. United States*, 880 F.3d 384, 389 (7th Cir. 2018) (plaintiffs lacked standing because actions not attributable to defendants caused their injuries).

Plaintiffs, lastly, also suggest that "misclassification" is itself an injury-in-fact. While they provide some law and discussion indicating that Congress enacted the FLSA with the broad purpose of providing "statutory protection to employees,"

they cite neither statutory text nor legislative history suggesting that Congress was ever concerned about standalone misclassifications that do not result in any financial or employment harm. *See Spokeo*, 136 at 1549; *cf. Hudson v. Protech Sec. Grp., Inc.*, 237 F. Supp. 3d 797, 802 (N.D. Ill. 2017) (misclassification practice allegedly denied plaintiffs' overtime pay). Plaintiffs' attempt to analogize this case to Federal Debt Collection Practices Act cases is misplaced. The FDCPA expressly grants consumers rights to sue based on intangible harms—for example, receiving misleading representations by debt collectors. *See* 29 U.S.C. § 1692e. Recognizing that "Congress may elevate 'to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law,'" courts account for the FDCPA's statutory prohibition on, keeping with the example, misleading representations when determining whether receiving such a representation constitutes injury in fact. *Wheeler v. Midland Funding, LLC*, 2017 WL 3235683, at *3–4 (N.D. Ill. July 31, 2017) (quoting *Lujan*, 504 U.S. at 578) (cited by Plaintiffs); *see also Spokeo,* 136 at 1549 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."). The FLSA, on the other hand, has no such statutory prohibition on misclassifications per se. *Accord Ratliff v. Celadon Trucking Servs., Inc.*, 2018 WL 1911797, at *3 (N.D. Ill. Apr. 23, 2018) ("Defendants' violation here is divorced from any concrete harm that the [statute at-issue] intended to prevent.").

Plaintiffs have thus failed to carry their burden with respect to standing to bring their FLSA claim. As a result, the Court lacks subject-matter jurisdiction over that sole federal claim, Count I, and dismisses it without prejudice. The Court will not exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. 28 U.S.C. §§ 1367(a), (c)(3); *see* R. 57 ¶ 9 ("The Court has supplemental jurisdiction over Plaintiffs' state law claims."). The Court dismisses those claims, Counts II through VI, also without prejudice. *See Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wisconsin, Inc.*, 657 F.3d 496, 505 (7th Cir. 2011) ("[I]t is well-established that the usual practice is to dismiss the state supplemental claims without prejudice . . . whenever all federal claims have been dismissed prior to trial.") (citations omitted).

## CONCLUSION

For the foregoing reasons, Plaintiffs have failed to carry their burden in asserting or showing standing. If Plaintiffs believe that they can file a complaint clearly alleging standing consistent with this opinion and with counsel's Rule 11 obligations, they may file a motion for leave to file an amended complaint on or before July 3, 2018. The motion should attach a redlined comparison between the current complaint and the proposed amended complaint, and it should be supported by a brief of no more than five pages describing how the proposed amended complaint cures the standing deficiencies. Defendants are not to file a response unless directed to do so by the Court.

ENTERED:

Dated: June 12, 2018

_____

Honorable Thomas M. Durkin
United States District Judge